## No. 2527.

## John McGowan *v.* The State.

THEFT—FACT CASE—See the statement of the case for the substance of evidence *held* insufficient to support a conviction for theft of a hog, because the true ownership is left in doubt, and the taking was in good faith.

APPEAL from the County Court of Walker. Tried below before the Hon. J. M. Smither, County Judge.

This conviction was for the theft of M. G. Dickie's hog, and the penalty assessed against the appellant was a fine of ten dollars and confinement in the county jail for twenty-four hours.

M. G. Dickie was the first witness for the State. He testified, in substance, that, early in the year 1887, he moved from Doctor Thomason's place, in Walker county, to another place some

miles distant in the same county. He left a sow and pigs at the said Thomason place. They ran on the range near the said place. He made a practice of going back to the range about once a week and feeding the said animals, by which means he was able to keep them gentle. He missed three of the said pigs from the range in October, 1887, which said pigs at that time were about seven months old, and were worth about two dollars each. About a month later the witness and El York went to the house of the defendant in Walker county, and witness asked defendant if he had any hogs. Defendant replied in the affirmative. Witness then told him that he had lost some hogs, and wanted to look through his stock. Witness, defendant and York then went to the defendant's field, where the witness found his said three pigs, and took them home, with the consent of the defendant. The animals were taken from the possession of the witness without his consent.

Cross examined, the witness said that he last saw the pigs (before he found them in defendant's field) about a week before he missed them. Of the hogs left on the range near Thomason's by the witness, only the old sow was marked. Witness gave El York one of the pigs for telling him where he would find the missing animals. The witness denied that, on the day he recovered the pigs, he met Albert Hightower in front of his, Hightower's house, and pointed out to Hightower a certain black sow which he said he would swear belonged to him, witness. He may have said that he believed the sow to be his. Witness did not remember that, in defendant's field, before finding the pigs, he said if they were his pigs they would come to his call, and that after he found them he called, but they refused or failed to answer his call.

El York testified, for the State, that, one day in October, 1887, he met the defendant in the bottom, about a mile from his, defendant's, house, driving a wagon that contained a sow. He told witness that his son Lee had found, in a certain haw thicket, a certain sow of his, defendant's, and had tied it down and that he was going after it. When the defendant, a short time afterward, again passed the witness, he had three of M. G. Dickie's pigs in his wagon. Witness knew those pigs to belong to Dickie. Defendant and his son Lee, who was with him, drove on toward home with the pigs. They were the same animals that witness and Dickie afterward found in defendant's field. On the day that Dickie and witness got the hogs,

the defendant said that he would have marked all three of them, but was afraid they would return to the range and somebody would accuse him of stealing them; that his son did mark one of them without his consent.

On his cross examination, the witness said that the feeling existing between him and the defendant was not friendly. Dickie gave witness one of the pigs for telling him where to find them.

The State closed.

Albert Hightower testified, for the defense, that he and defendant were neighbors. He knew a certain sow that was given to defendant by his mother. That sow had pigs, and she and the pigs disappeared when the pigs were about a month old. The said pigs were about as old as the pigs that Dickie claimed and took from defendant. The defendant claimed to own the three pigs that Dickie claimed and took from him. On the day that Dickie recovered the three pigs, he directed witness's attention to a certain black sow, and said that he, Dickie, would swear that he, Dickie, owned that sow. The witness knew as a matter of fact that that sow belonged to the defendant.

Bob Handy testified, for the defense, in substance, that he was present when the defendant and his son caught the three pigs and put them in a wagon and took them home. When caught by defendant and his son, those pigs were with a sow which the witness knew to be an animal that was given to defendant by his mother.

Lee McGowan testified, for the defense, that a certain sow given to the defendant by his mother, had pigs in February, 1887, and about a month later the sow and pigs disappeared. Witness passed them in the bottom in October, 1887, and he and defendant went to the bottom, caught the pigs and took them home in a wagon. The said pigs were with the defendant's sow and, the witness was confident, were the property of defendant. They were claimed and taken openly by him in daytime. Dickie afterwards came to defendant's house and claimed and took the said pigs.

Peter Oliphint testified, for the defense, that he was riding past the field of defendant one day in November, 1887, when he saw and heard defendant and Dickie, in defendant's field, engaged in an angry dispute about hogs. Dickie called to witness to settle the matter—the matter in dispute being the

claim of each to some hogs. Witness then asked defendant how many and what kind of hogs were in dispute. Defendant replied that he and Dickie each claimed three certain shoats. Dickie was threatening to whip defendant unless he surrendered the animals. It was agreed to leave the dispute to witness, and witness said to defendant: "As Dickie is determined to whip you or have the hogs, I believe if I were you I would let him have them rather than fight him, for it will cost you more to pay for fighting than the shoats are worth." Defendant then said: "As we agreed to leave it to you, and you say I had better give up the hogs, I will do so, although I believe they are mine." Dickie then took the hogs home.

*Abercrombie & Randolph*, for appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

HURT, JUDGE. This is a conviction for theft of hogs, with imprisonment in jail twenty-four hours and a fine of ten dollars as the punishment.

The hogs were alleged to be the property of M. G. Dickie. The evidence leaves the issue, as to whether the hogs belonged to Dickie or the defendant, quite evenly balanced. But, concede that they were the property of Dickie, the proof fails to show the fraudulent intent. On the contrary, the facts clearly present a case in which the defendant, if not the owner of the hogs, certainly believed himself to be, and took them so believing.

The verdict is not supported by the evidence, and for this reason the judgment is reversed and the cause remanded.

*Reversed and remanded.*