### JOHN MORAN v. THE STATE.

#### No. 7154. Decided March 14, 1923.

**Theft of Cattle—Claim of Ownership—Insufficiency of Evidence.**

Where, upon trial of theft of a cow, the evidence showed that the defendant took possession of the animal in question under a claim of right, and the circumstances leading him to the conclusion that the animal belonged to him were such as to put the question of fraudulent intent in such degree of doubt that this Court does not feel warranted in giving its sanction to the conviction, the judgment must be reversed, and the cause remanded.  Following Reese v. State, 44 Texas Crim. Rep., 34, and other cases.

Appeal from the District Court of Hardin.  Tried below before the Hon. J. L. Manry.

Appeal from the conviction of the theft of a cow; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*O'Brien & Shaw,* for the appellant.—On question of insufficiency of fraudulent intent: Stokely v. State, 24 Texas Crim. 509; Flagg v. State, 51 Texas Crim. Rep., 602; Anderson v. State, 177 S. W. Rep., 85.

*R. G. Storey,* Assistant Attorney General for the State.

MORROW, Presiding Judge.—The conviction is for the theft of a cow; punishment fixed at confinement in the penitentiary for a period of two years.

The evidence is voluminous to a degree that precludes its detailed statement within the scope of this opinion. On the part of the appellant, it was shown without contradiction that on the 30th day of August, 1918, he received at the dépot at Silsbee a certain dark brown heifer with a white motley face, about fifteen months old, and of a fighting disposition, shipped to him by his father-in-law from Austin County. The bill of lading was exhibited in evidence, and neighbors were called to verify the receipt of the animal. She was turned loose on the range and took up with the gentle cattle in the neighborhood. She calved in April, 1920. Afterwards two witnesses, at the instance of appellant's wife, went on the range and identified the cow and brought her to appellant's residence. When received, she was unmarked, but had a brand on the hip. Appellant claimed that when the cow was brought to his lot by the witnesses mentioned, he took no notice of the brand, as he recognized the cow as his own. He kept her in his lot and open to public view in the town; turned her out daily and made no attempt to conceal her. She was a well-known animal and observed by a number of witnesses, none of whom had even seen upon her the brand of Harris, the alleged owner in the indictment, until after she had her calf. She was of the same description as the animal received by the appellant, that is, dark brown, motley faced, and of a fighting disposition. When the animal was claimed, appellant explained his possession by the statement that he had received her from his father-in-law by shipment while she was a heifer; that he sawed the tips of her horns in order to prevent her from fighting; that when Mr. Harris insisted that it was his property, he surrendered her rather than to have trouble with white people. At the time of the surrender, there was no criminal prosecution pending; that the cow, while in the possession of Mr. Harris, died and the hide was consumed by the buzzards.

It is the State's theory that the animal in question was the offspring of one owned by Will Harris; that she was of a dark brown color and had a white motley face, and of a fighting disposition; that Harris lived in the outskirts of the town of Woodrow, about a mile from Silsbee, the home of the appellant, and the intervening space being built up, made them practically one community. The cow had been branded when less than a year of age, on the left hip. Harris' brand was upon her and was plainly visible. According to the State's theory, at the time the cow was found, in the possession of the appellant, the range of the cow had been about Woodrow, within a mile of the Harris' home; that she was first missed by Harris in

April, 1920, and on the 15th of June of the same year, the cow and calf were found in the possession of the appellant at his home in Silsbee. She was in an open pen and claimed by the appellant. Harris insisted that she belonged to him and the appellant acquiesced, and Harris took possession of her.

Appellant's brand was a half circle T or circle T; Harris' brand was "L N". Appellant, when his possession was challenged, said that the brand had been placed upon the cow when she was a year old and was on her when he received her; that the Harris brand had overridden, or been stamped over on top of the circle T. Appellant told Harris that he was going to claim ownership and insist upon the ownership of the cow as his property. She was afterwards, in March 1921, placed in a pasture by Harris, and according to the State's testimony, she died in April 1921. The carcass was inspected by Harris and a man in whose pasture she died; that the hide was not preserved. At that time the indictment was pending.

There was a controversy touching the date of the brand. The State's testimony was to the effect that the brand was an old one and had been placed upon the animal when she was a calf; and a number of witnesses who were familiar with the animal had seen her on the range, testified that they had not seen the brand upon her and had known of no ownership or of Harris asserting ownership towards her until she had calved in 1920. There was conflicting opinion testimony with reference to whether or not the brand could be identified. Appellant introduced a number of witnesses showing the receipt of the animal; that she was branded at the time with a circle T, giving her description ånd fighting disposition; that she was received from the train by a witness for the appellant; that witnesses who knew the animal in 1918, delivered her to the appellant's home.

The evidence that the appellant took possession of the animal in question under a claim of right, and the circumstances leading him to the conclusion that the animal belonged to him were such as to put the question of fraudulent intent in such degree of doubt that this court does not feel warranted in giving its sanction to the conviction. There are many precedents supporting this view, some of which are Reese v. State, 44 Texas Crim. Rep. 34; Louis v. State, 29 Texas Crim. Rep. 105; McGowan v. State, 11 S. W. Rep. 112.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*