W. B. Burns v. The State.

No. 15151. Delivered May 11, 1932.
Reported in 49 S. W. (2d) 1100.

The opinion states the case.

*Adams & McAlister,* of Nacogdoches, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—The offense, theft of a hog; the punishment, two years in the penitentiary.

There are several interesting questions presented with reference to the failure of the court to permit appellant to offer in evidence certain matters occurring subsequent to the killing of the hog he was charged with stealing which he claimed showed, or tended to show, that the hog belonged to appellant and that he took the hog in good faith, and that if a mistake was made, it was an honest one. However, in view of the disposition we shall make of this case, we think it unnecessary to discuss those questions.

Appellant was indicted for the "unlawful and fraudulent taking of one hog, the property of one A. S. Fuller."

The evidence shows that A. S. Fuller had a number of hogs running at large. The evidence also showed that the appellant had purchased, previous to the time he was charged with the theft, a number of hogs. Said hogs had different marks. It is also in evidence that the appellant had some of said hogs running at large and had branded some of his hogs with the letter B. The evidence showed that the appellant on the day of the alleged theft of the hogs came to the home of one Jim McGee, who lived between five and six miles above the town of Corrigan; that he came to the said McGee's to get him to hunt a hog appellant claimed to have lost; that they found the hog which the appellant claimed he was hunting and penned it with a number of other hogs. While they were driving the hogs to the pen, the appellant mentioned to McGee that he thought he had seen his brand on a spotted hog and he made said remark several times while they driving the hogs to the pen. When they got the hogs in the pen, the appellant caught the hog upon which he said he thought he had his brand and examined it and claimed that he had his brand on him. He asked the witness McGee to examine the hog to see if he could find his brand; that he, the said McGee, examined the hog for a brand and found a scar up behind the shoulder. He testified further that after appellant had examined the hog he seemed to think it was branded and it was his hog.

A witness by the name of Grady Crecilius testified that he also assisted the appellant and McGee in driving the hogs up and putting them in the pen; that the appellant then said, "I believe I know one of the hogs, so I am going to examine it"; that he examined it and then said, "Gentlemen, this is my hog. I want you all to examine it"; that he said to the witness, "Son, you are younger than I am. You jump in," and the witness then got in the pen and there was a scar on the hog's shoulder and he made the remark, "There is a scar on the shoulder;" and that McGee then got in and examined the hog. He testified further that a Mr. Jim Sheppard and a Mr. Huff came up and appellant asked them to look at the hog; that this was about the middle of the morning, and he left before the appellant killed the hog.

Another witness testified to substantially the same facts.

A witness by the name of Sid Sherman testified that he lived at Corrigan and was constable there; that he came in possession of the meat of the hog in question between Mr. Fuller and the appellant; that the meat was turned over to him by Mr. Fuller and he kept it in the market and later he bought the meat; that the examination he made of the meat was after they had had the trial in the justice court, when they turned the meat back to the appellant; that he threw the side of the meat on a board, took a butcher knife, and raked the salt off to satisfy himself as to what he had heard about it; that he found a scar there that looked like it had been burned, it might have been a brand closed up as well as he could tell; that it looked like a burn to him; that he had bought some hog meat before from the appellant and it was not branded plain but was spotted; that it looked to him like it might have been a B; that he could not tell positively, but that it looked like a burn to him as well as he could tell; that they had bought some hogs from the appellant before and they were branded.

A witness by the name of Gilber Owens testified that he lived about three miles from Corrigan in the years 1928 and 1929; that he hauled some hogs for appellant from the E. & W. stockyards to the farm where the appellant lived about three miles from Corrigan; that he hauled about 200 head and that he had not noticed anything particular about the marks on the hogs but there seemed to be two different marks; that they were a mixed lot of hogs, and some were in a different brand than the others.

A. S. Fuller, the person who claimed the hog in the controversy, testified that he lived three miles northeast of Corrigan; that on the day the hog was taken by the appellant, he was out looking for some hogs; that when he came by the McGee place, McGee told him that W. B. Burns had killed his hog and told him that he had carried his own hog home alive; that he then went to town and got a search warrant and got the officers to go and serve the papers on appellant; that when they got to appellant's house they found the hog cleaned and partly cut up; that they

found the head of the hog when they walked in; that he asked the appellant why the marks were disfigured, and the appellant replied, "The little boy did it." He testified that two splits were out of the right ear and the ear had been doubled up and cut out; that there was a crop and underbit in the ear and an old mark. He further testified on cross-examination .that the hog he had on the range was a white spotted hog and he owned a good many hogs. He also testified that to the best of ·his belief it was his hog they found at appellant's home; that the hog was in his mark except that the split was cut. He further testified that he had searched the range and he could not find the hog he had missed; that at the present time the appellant lived at Corrigan. but that he had lived before on Bear Creek, which was about a mile and a half from the witness'; and that the appellant had hogs on the range at that time. He stated that at the time he talked to the appellant, the appellant insisted that there was a brand on the hog and said the brand was a B; that he did not examine the shoulder of that hog closely but that he saw no sign of a brand; that there was a little scar which was a little crooked and about an inch long.

There is, as we understand the evidence, an absence of fraud that should be attendant upon the entire transaction to constitute theft. The appellant took the hog in open day and at the home of the witness McGee openly and under a claim of right. There was no attempt, so far as the evidence shows, to secrete the hog or the meat after it was taken. Our statute (Penal Code, 1925, art. 1443), has wisely provided that there must be a fraudulent taking, and, of course, a fraudulent taking depends upon circumstances; that the taking was open was immaterial, however; but it is material that fraud existed in connection with the taking, and it is not every taking which constitutes theft. So far as the record shows, every act, movement, and declaration with reference to the hog was open, public, and without any concealment. We are of the opinion that the verdict of the jury is not supported by the evidence. See Parks v. State, 29 Texas App., 597, 16 S. W., 532; Young v. State, 47 Texas Crim. Rep., 468, 83 S. W., 808; White v. State, 23 Texas App., 643, 5 S. W., 164.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.