### POMROY COLEMAN v. THE STATE.

No. 18009. Delivered March 4, 1936.
State's Rehearing Denied March 25, 1936.

The opinion states the case.

*John S. Simmang* and *E. T. Simmang, Sr.*, both of Giddings, Texas, for appellant.

*Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted of the theft of a hog, and his punishment was assessed at confinement in the state penitentiary for a term of two years.

Appellant's first contention is that the court erred in declining to give his special requested instruction to find him not guilty because the State had failed to make a complete case. We think there is some merit in appellant's contention. The record shows that the prosecuting witness, Ernest Gay, had some time prior to the time of the alleged offense purchased a black poland china gilt which had a little white in her face and possibly a couple of white feet, large ears and weighed about one hundred and seventy pounds; that it had no mark in either ear at the time he turned it out on the range and when he last saw it; that the prosecuting witness in passing along the public road, which ran along appellant's premises and within thirty steps of the pen in which appellant had the hog confined, noticed it and thought it to be the one he had missed. A few days later he took his son, T. E. Gay, his grandson, Gary Boswell, and also Elmar Edans to inspect the hog and identify it, which they did. While they were looking at the hog, appellant's wife went to see what they were doing. When she spoke to them the prosecuting witness told her to tell her husband to turn the hog out or he would prefer a charge against him for theft. She replied that her husband bought the hog from James Bell and he would not turn it out. A day or two later the prosecuting witness made a complaint against appellant charging him was theft of the hog, but appellant still declined to release it. He was subsequently indicted.

At his trial he and his wife testified to having bought the hog from James Bell in the month of October, preceding the 4th day of February, 1935, the date of the alleged theft. He

also proved by Messrs. Price and McManus, two disinterested witnesses, that they knew the hog which appellant purchased from Bell in October, 1934, as Bell lived within one-quarter of a mile from them; that Bell raised the hog and it ran at and near their respective homes where they saw it almost daily; that it was a black poland china gilt with some white in its face, some white feet, and had a small piece bitten out of its left ear by a dog; that after the appellant had been indicted they were requested to come to appellant's home to inspect the hog, which they did and found the hog which appellant had in his pen to be the same hog which he had purchased from James Bell. In addition appellant proved a good reputation for honesty.

It is apparent from the testimony above set out that either the State's witnesses or those who testified for appellant were mistaken as to the identity of the hog in question, and if this was the only question involved, we would not feel authorized to disturb the verdict of the jury. But as there cannot be theft without a fraudulent intent on the part of the taker, we must determine whether the facts and circumstances proven are sufficient to show beyond a reasonable doubt that appellant took the hog with a fraudulent intent to deprive the prosecuting witness of the value thereof. That appellant either purchased the hog in question or one just like it from James Bell is shown by the evidence of disinterested parties. The hog which the prosecuting witness lost did not bear any earmarks when he turned it out on the range, but the hog which appellant purchased from James Bell had a piece bitten out of its left ear. The State's witnesses contend, however, that this earmark appeared to be fresh when they saw it in appellant's pen, which might lead to an inference that appellant undertook to disfigure or disguise the hog; but if such was his intention, then why would he cut a very small piece out of its left ear which was only visible by close inspection and would not tend to disguise it. That he did not try to conceal the hog is apparent from the fact that he kept the hog in a pen located near a public road where people passing by his place could see it at all times of the day. All of this is inconsistent with a fraudulent intent and leads us to the conclusion that the facts and circumstances proven fail to show beyond a reasonable doubt a fraudulent intent on the part of the appellant. Therefore, under the law and authorities hereinafter cited, we do not feel that we would be warranted in permitting the verdict of conviction to stand. See McGowan v. State, 27 Texas App.,

183; Moran v. State, 249 S. W., 474; Burns v. State, 49 S. W. (2d) 1100.

Believing the evidence insufficient to support the conviction, the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—The State moves for a rehearing. The question involved is the sufficiency of the facts. There is no dispute over the fact that appellant put a hog in a pen near a road open to the public and along which many people passed about the time of this alleged theft. When Mr. Ernest Gay, the alleged owner of the stolen hog, went to this pen with other witnesses and inspected the hog and claimed it, he was then told by appellant's wife that her husband had bought the hog from James Bell, and that they were going to keep it. James Bell went to appellant's pen, examined the hog therein, and testified on this trial that he raised that hog and sold it to this appellant. Bell's wife testified to the same thing. Webb Price testified that he was a farmer and worked about 120 acres of land, and that he knew James Bell, and was familiar with the hog in question; that Bell had rented land from him, and this particular hog was around his premises while it was growing up, and that he knew it, and that the hog in appellant's pen was the hog raised by Bell. Sam McManus testified that he knew the hog sold by James Bell to appellant, and had known it ever since it was born, and that he went to appellant's pen and examined the hog therein, and that it was the hog raised by James Bell. McManus was a farmer, owning 100 acres of land in Burleson County. Appellant took the stand and testified that he bought the hog from James Bell, and put it in the pen where it was seen by witnesses, and that he did not steal it, and that he had never been charged with or convicted of any felony. Appellant introduced seven men, one of them a justice of the peace, and all these witnesses testified they had known him for many years, and that his reputation in the community where he resided for honesty was good. The State introduced four witnesses, the owner of the alleged stolen hog, his son and grandson, and another witness, who

testified positively that the hog belonged to said alleged owner.

The criminal courts are not places to settle propositions of title to property in dispute. The large bulk of the disinterested testimony in this case seemed to support the claim of appellant. Certainly the testimony is not sufficient to show that appellant fraudulently took from the alleged owner his property without his knowledge or consent, and with the intent to defraud said owner and to appropriate it.

The State's motion for rehearing is overruled.

*Overruled.*