## FRANCISCO RAMIREZ V. THE STATE.

No. 22768. Delivered March 1, 1944.
Rehearing Granted April 26, 1944.

The opinion states the case.

*H. B. Galbraith,* of Brownsville, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

Appellant was convicted of theft of one head of cattle and assessed a penalty of two years in the penitentiary.

The principal grounds for the appeal are based on the contention that the indictment does not describe the head of cattle involved as to the age, color, brand or otherwise. This question has frequently been before our court and it is the consistent holding that an indictment for the theft of cattle need not describe the cattle stolen. (2 Texas Jurisprudence, page 925, section 156).

The animal described by the witnesses in this case is referred to as a white calf, part Brahma and part Jersey. It has in part the brand of Charles E. Gooding and in part, the brand of ap-

pellant's father, admittedly placed there by the father. Appellant introduced no evidence. We consider the evidence is sufficient to support the conviction.

Several bills of exception complain of the introduction of evidence and these are based on the contention that the indictment is insufficient. Having held to the contrary it follows that all bills of exception complaining of the introduction of evidence will be over-ruled.

Bill of Exception No. 5 makes the contention that there is a variance in the evidence. To some extent there is, but this was a matter for the jury's consideration and they determined it against appellant. Had there been a variance between the evidence and the allegation, a question of law would have been presented for this court to pass upon.

Finding no error, the judgment of the trial court is affirmed.

### ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

It is is urged by appellant in his motion for rehearing that the evidence is wholly lacking to connect appellant with the animal claimed by the owner to have been stolen.

The only description of the animal in the indictment is "one head of cattle" alleged to have been stolen by appellant from Chas. E. Gooding on or about November 14, 1942. We must go to the evidence for the identification of the animal for the theft of which appellant was on trial. Two cases against appellant for theft of cattle from Gooding were submitted at the same time, and there may have been some confusion of the evidence in the two cases in our consideration of the present case. However, the two cases were tried at different times and the jury had before it only the evidence in the present case in passing upon appellant's guilt, and we are necessarily confined to the evidence as found in the statement of facts in the present record.

Mr. Gooding and Antonio Ramirez (the father of appellant) had adjoining places and some of the Ramirez cattle were running with the Gooding cattle. Mr. Gooding had been missing some of his cattle. On October 15, 1942, he had some officers present, also appellant and his father, and they had a "round-up" of the cattle in order to separate them.

Mr. Gooding testified as follows: "On the 15th of October, 1942, I owned a white brahma heifer. I can give you a description of her as to marks and brands; she was branded on the left jaw with my brand, an 'H E', and had a notch in the left ear; she was a light cream in color, or very nearly white, a half-blood brahma heifer. As near as I can judge, she was about eighteen months old."

As to whether this white brahma heifer was among the cattle "rounded-up" on October 15 Mr. Gooding testified:

"As to whether the white brahma heifer was among them; well, she was supposed to be in there; we herded up all we could get. You ask whether I saw her; well, I think she was there; in fact I will say she was there. I will tell the jury that I saw her there that day in October when we had this round-up. * * * You ask whether the white brahma heifer was separated from Ramirez's cattle that day; she certainly was if she was in there; and I would say she was. * * *This white brahma heifer did not have any other marks other than what I have described; that is, nothing more than she might possibly have had a black tail, which a good many of these mixed bloods do, but other than that she was a solid color. Other than the marks and brands I have described, she did not have any further marks. I raised her myself, and there was nothing but my brand on her. That was an 'H E' on the left jaw."

Sometime between October 15 and November 14 they had another "round-up" at which time Mr. Gooding testified that the "white brahma heifer" was there, and that he saw her frequently between October 15 and November 14, but that after the latter date she was missing, and had not been seen since that time. Mr. Gooding testified that this animal was taken without his consent. Under the evidence in this case the "white brahma heifer" with the "H E" brand on her left jaw was the only particularly described animal that Mr. Gooding claimed to have been stolen, and the only one testified to have been taken without his consent. Therefore, the State tied itself to this particular animal so far as this case is concerned, and unless the State connects appellant with this particular animal the State's case fails.

Will Cabler, a deputy sheriff, was present at the "round-up" in October, and he testified as follows:

"I remember a white brahma heifer out there at that time. I can describe her; she was a white or cream brahma—some

might call her a light cream, some might call her white--and she had an underbit in the left ear. That is the same thing as a notch. And she had an 'A' on the jaw and had her tail bobbed. There were no other marks. That particular white brahma heifer was cut into Mr. Gooding's pen with his cattle that day of the round-up; that pen was on his place, there in his pasture."

The State then called Jose Saldana as a witness, who testified that he bought two heifers from appellant on November 14; that appellant signed his mother's name to the bill of sale (she being present at the time) and an entry was made in a book: We quote:

"This entry in this book shows 'one bald-faced heifer and one white heifer;' there were two animals. This book shows the marks that the white heifer mentioned had; she had one 'A' on the cheek; there was a little 'A' on the side of the cheek, on the left side." The following bill of sale was introduced in evidence by the State.

"Nov. 14, 1942.

"I certify having sold to Mr. Jose Saldana two heifers, one white and one brown, with spotted head, being the property and of the brand of my mother. The white one has this brand A and the other has this brand AR.

"(Signed) Rosa M. de Ramirez."

Mr. Saldana further testified:

"This cow that I am talking about was branded on the left jaw with an 'A.' I know the brand of the Ramirez family. It is a mark on the cheek of an 'A', and an 'AR' on the hip, which is the brand. * * * When this white heifer was brought to me, she had this 'A' on the jaw. It was an old brand, and it was clean, and had not been tampered with. When I bought it, I did not have any idea that it was anybody else's except Antonio Ramirez', or his wife's, because the brand on the heifer was a clean brand."

Mr. Gooding never saw the animals after they were sold to Saldana. He was a butcher and killed them, so the identity of the animals depends purely on description.

W. E. Riggs, a State Ranger, was present at the "round-up" on Gooding's place in October, and he described a white brahma heifer among those present, as being about eighteen months old,

with an "A" on the left jaw and a small underbit in the left ear. He testified further:

"Her tail was bobbed that day, in my presence; I saw that done. I don't know whether it was on the 15th or not, I don't remember that, but it was the day of that round-up. That was the same heifer that was in Mr. Gooding's pasture, that he claimed. Her tail was bobbed while I was there, and the reason it was done, old Antonio Ramirez admitted that heifer did belong to old man Gooding, and it was following a Gooding cow. * * * old man Antonio Ramirez admitted that this heifer was one he had taken from a Gooding cow and branded with an 'A', his brand, on the left jaw, and that was the reason her tail was bobbed, because we intended to come back later and separate the Gooding cattle. We did come back later, in October, and made another round-up. At that second round-up, all the cattle was together in that pasture; I was doing the cutting—I was in the pen on horseback cutting the cattle apart, and this particular heifer I knew as well as I knew my own horse, because she had kicked three teeth out for me before—we had talked about her, and they hurrahed me a lot about her kicking me in the mouth, and so I cut her out at the gate with the Gooding cattle and left the Ramirez cattle at that pen, and put the Gooding cattle over in another one. This was on October 15th, 1942. The heifer's tail was still bobbed on that date, and she had this 'A' on her jaw that Ramirez had admitted putting there, and she had this mark in her left ear, which is old man Gooding's mark."

We have set out the evidence at greater length than would ordinarily be deemed necessary because the proposition urged by appellant turns on the facts. Appellant did not testify himself, and introduced no evidence whatever. All the evidence referred to came from State's witnesses and was therefore vouched for by the State. Appellant rested his case when the State closed, evidently relying upon the proposition that the State had failed to make out its case. Taking the record as it stands it is made clear that at some time the father of appellant had placed his "A" brand (possibly by mistake) on the jaw of one of the Gooding heifers. This animal was one of those which figured in the October 15 round-up, and is the animal referred to by witness Cagler and Riggs. They each refer to her as having the "A" brand on her jaw, and as being "bobtailed." Riggs is particularly definite about the latter detail as reference to his testimony will show. It is possible that this is one of the animals referred to by the witness Saldana as having been purchased by him from appellant, and as described in the bill of sale. But none of the witnesses in this record place the "white brahma

heifer" branded "H E" on the jaw in the possession of appellant, nor show his connection in any way with that particular animal. That is the only one which this record shows was taken, —if it was taken—without Mr. Gooding's consent. So far as this record shows appellant may have been within his rights in disposing of the two animals described in the bill of sale to Saldana, and described by said witness.

From the re-examination of the statement of facts we are impressed with the soundness of appellant's contention, viz:— that the record in the present case has failed to connect appellant with the animal which the owner described as missing, and as having been taken without his consent.

Appellant's motion for rehearing is granted, the judgment of affirmance is set aside, and the judgment of the trial court is now reversed and the cause remanded.