## FRANK BEYER V. STATE

No. 34,082.   January 10, 1962
Motion for Rehearing Overruled March 28, 1962
Second Motion for Rehearing Overruled May 9, 1962

*Gib Callaway,* Brownwood, and *Schlesinger, Goodstein & Semaan,* by *Lionel Goodstein,* (On Appeal Only), San Antonio, for appellant.

*Leon Douglas,* State's Attorney, Austin, for the state.

MORRISON, Judge.

The offense is cattle theft, with a prior conviction for an offense of like character alleged for enhancement; the punishment, ten years.

Sam. C. Cathey testified that sometime ago he had been in

the cattle business; that two years previously his son took over the business; that the cattle on the Cathey place and on the appellant's adjoining property became mixed because the fence was in bad repair; that while the Catheys and appellant were separating the cattle before testing them for brucellosis he claimed the cow in question, stating that it belonged to his son, along with two other cows, at which time appellant told him to take the other two cows if they were his, but refused to surrender the cow in question; that he recognized the cow as belonging to his son because he raised her and recognized the "dollar mark" brand on her right hip; that she had been recently branded on the jaw with appellant's "J F" brand and her horns and ear had been recently cut; that the two cattle appellant surrendered to him had been recently ear-marked with what was apparently appellant's mark but the cow in question was the only one that was branded with the "J F" brand, and that the Catheys had sold no cows since 1954.

J. R. Cathey testified that the cow in question belonged to him, that the cow had his dollar mark brand on her right hip, and that he had never sold any cows to appellant.

Joe Townsend, sheriff of Brown County, testified that he picked up the cow in question in appellant's pasture after a complaint was filed by S. C. Cathey, that the cow had horns that had been recently tipped and fresh earmarks, that she had a fresh "J F" brand on her jaw and a dollar mark brand on her right hip, and that the dollar mark brand was dim and hard to make out before the hair was sheared away.

Ben Tongate, Bill Strickland and Billie Porter testified that they had examined the cow in question and were of the opinion that the brand on her left hip was the Cathey dollar mark brand.

Chester Davis, testifying for appellant, stated that he had worked for him and that the cow in question had been in appellant's pasture and he had treated it for screwworms a year before.

Mrs. W. C. Lynch testified that she had leased to appellant the pasture adjoining the Cathey place in September, 1959, that she was familiar with appellant's cattle, and that the cow in question was one of the cattle that appellant originally put into the pasture at the time it was leased.

Jesse Davis testified that he sold cattle to appellant in 1959 of the same type as the cow in question.

Seaburn Garwin testified that he hauled some cattle for appellant on February 2, 1961, to the Yeager sales barn to be tested for brucellosis, that they were of the same type as the cow in question, and that appellant branded and tipped the horns of four or five of these cattle on that date.

Leonard Greer testified that he received a commission for the sale of some cattle from Jessie Davis to appellant in 1959, which cattle were of the same type as the cow in question. He further testified that the brand on the cow in question was not a dollar mark brand but a figure eleven brand.

Appellant, testifying in his own behalf, said that he bought the cow in question from Jessie Davis in 1959, that the brand on the cow's hip was a figure eleven instead of a dollar mark and was on the cow when he bought her.

The jury resolved the disputed issue against appellant. We will discuss the contentions advanced by appellant in brief and argument.

We are met at the outset with the contention that the court erred in accepting the jury's verdict and rendering judgment thereon. Among the forms of verdict submitted was one finding appellant guilty of the primary offense alone and one finding him guilty of the primary offense and further finding that he had been convicted in the prior case alleged for enhancement. The jury returned both verdicts signed by the foreman. The first fixed appellant's punishment at three years, while the second, under the terms of Article 62, V.A.P.C., fixed no punishment. The judgment of the court, based upon these verdicts, was that appellant be confined for a period of ten years.

It is apparent that the court disregarded the first, accepted the second, and gave application to Article 62, supra, in fixing the punishment.

It is appellant's contention that, since the court accepted both verdicts, this made them so uncertain and contradictory as to not support a judgment. The State contends that, even though the court should not have accepted both verdicts, it is within the power, and becomes the duty of this Court, to reform the judgment so as to make it conform to the verdicts in question. Since the court accepted verdict No. 1, which in effect found that appellant was not the same person who had been convicted in the prior case alleged for enhancement, this Court must accept such

finding and cannot uphold the ten-year judgment imposed by the court. But it does not necessarily follow that we must reverse the conviction because we have a finding of guilt as to the primary offense *plus* the fixing by the jury of a definite term of imprisonment. Our attention has been directed to no case directly in point. After careful consideration, we have concluded that it becomes our duty to reform the judgment to find appellant guilty of the primary offense and give application to that portion of the verdict which fixes his punishment at confinement for three years. The judgment is reformed so as to provide for a punishment of three years instead of ten years, and the sentence is reformed to read "not less than two (2) nor more than three (3) years". It is so ordered.

Having disposed of the most difficult question in the case, we pass on to a consideration of the other contentions advanced by appellant.

Appellant contends that the evidence is insufficient to support the conviction and cites Darnell v. State, 43 Texas Cr. Rep. 86, 63 S.W. 631; Moran v. State, 94 Texas Cr. Rep. 55, 249 S.W. 474; Enox v. State, 131 Texas Cr. Rep. 55, 101 S.W. 2d 243; and Ramirez v. State, 147 Texas Cr. Rep. 218, 179 S.W. 2d 973, to support his contention.

In Darnell, supra, the animal was known in the community to be a stray, and appellant took it under the honest belief that he had a right to take it. In Moran, supra, appellant took a cow and calf off the range under the belief that the cow was one he had turned out as a heifer and he surrendered her to the prosecutor before any criminal action was instituted. The Court, through Judge Morrow, held that the circumstances which led appellant to believe the cow belonged to him were so strong as to put the question of fraudulent intent in such doubt that the Court could not affirm the conviction. In Enox, supra, when the owner claimed the bull, appellant said, "Well, if he is yours, he damn sure isn't mine," and tried to buy the bull. The Court held the evidence insufficient to support the conviction because it did not show a distinct and conscious assertion of ownership by the appellant. In Ramirez, supra, the State failed to connect appellant with the cow that was stolen.

The State's evidence in the case at bar shows a branding and marking by appellant of a cow already bearing the Cathey brand plus a definite assertion of ownership on his part, and we are

of the opinion that the evidence is sufficient to support the conviction.

Appellant contends that the court erred in excluding from evidence a check dated January 6, 1959, from appellant to Jessie Davis marked "For 51 big cows" for the reason that it fixed the date on which appellant purchased the cow in question. The record indicates that both appellant and Davis testified concerning the sale of cattle by Davis to appellant in 1959, and, as the check in no way shows that the cow in question was among those for which the check was given, we can see no prejudicial error in the exclusion of it. For the same reason, there was no error in excluding from evidence the check dated February 2, 1961, appellant gave Seaburn Garwin for "hauling cows from Owens" to the Yeager sales barn.

Appellant contends that the court erred in excluding from evidence a Texas Animal Health Commission report regarding a brucellosis test given 21 head of his cattle on February 2, 1961, because such report corroborated appellant's evidence that he branded and cut off the horns of certain cattle on that date. The report, which is a part of the record before us, in no way shows that any cattle were branded or had their horns cut off on the date in question, and we are of the opinion that no error was committed in excluding it from evidence.

Appellant also complains that the court erred in refusing his requested charge to the effect that the jury could not consider his former conviction for cow theft as a circumstance affecting his credibility as a witness.

The court charged the jury that they could not consider appellant's former conviction, if any, in passing upon the issue of his guilt or innocence for the primary offense charged in the indictment, to which appellant made no objection.

We have been cited no authority and are aware of none which holds that the charge as given did not fully protect appellant's rights.

No reversible error appearing, the judgment as reformed herein is affirmed.

ON APPELLANT'S MOTION FOR REHEARING

DICE, Judge.

Appellant strenuously insists that we were in error in reforming the trial court's judgment so as to find appellant guilty of the primary offense of cattle theft and fix his punishment at confinement in the penitentiary for a term of three years as found by the jury in their verdict No. 1 returned under the first count of the indictment.

It is first contended that the two verdicts returned by the jury were nullities because they in effect found appellant guilty of two different felony offenses under one single indictment. Numerous cases are cited by appellant which support the proposition that an accused cannot be convicted of more than one offense under a single indictment.

While such is the rule in this State, appellant does not here stand convicted of two different offenses under the one indictment. In each verdict, the jury found appellant guilty of the primary offense of cattle theft. The finding of the jury in the second verdict that appellant had been previously convicted of cattle theft was not a finding of his guilt of another offense. The statutes, Articles 61-64, V.A.P.C., authorizing enhancement of punishment upon proof of a prior conviction or convictions do not create an offense but merely prescribe a more severe punishment. 16 Texas Jur. 2d, par. 403, page 624; Ellison v. State, 154 Texas Cr. Rep. 406, 227 S.W. 2d 545.

Appellant next insists that we were in error in reforming the court's judgment because the two verdicts returned by the jury and accepted by the court were so indefinite, uncertain and inconsistent as to the punishment that they cannot support any judgment of conviction rendered thereon.

In support of his contention appellant cites certain decisions by this Court where it has been held that verdicts finding an accused both "guilty" and "not guilty"; assessing the punishment at a fine "and/or" confinement in jail; fixing two different punishments for the same offense or fixing a punishment in excess of that provided by law are too indefinite to support a judgment of conviction thereon.

We have carefully reviewed the cases cited and remain convinced that the verdicts returned by the jury in the instant case were sufficient to support the judgment of conviction, as reformed by this Court, finding appellant guilty of the primary offense of cattle theft and ordering that he be punished by confinement in

the penitentiary for three years as fixed by the jury in its verdict No. 1 which was returned into the court.

As heretofore pointed out, each verdict returned by the jury found appellant guilty of the primary offense of cattle theft. In verdict No. 1, the jury specifically fixed appellant's punishment at confinement in the penitentiary for three years. No punishment was fixed by the jury in the second verdict.

Remaining convinced that a proper disposition was made of the case upon original submission, the motion for rehearing is overruled.

Opinion approved by the Court.